Lucia T. Waller, Appellant, v. Mildred Loring Wilson et al., Appellees.
Mildred Loring Wilson, Appellee, v. Lucia T. Waller, Appellant, and Others, Appellees.

Gen. No. 37,850.

420

Opinion filed November 20, 1935. Rehearing denied December 4, 1935.

WILLIAM H. DILLON, of Chicago, for appellant.

McCULLOCH, McCULLOCH & McLAREN, of Chicago, for appellee Mildred Loring Wilson; LEWIS C. MURTAUGH, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

Lucia T. Waller, plaintiff, appeals from a decree entered by the court, in which it dismissed plaintiff's

bill for want of equity and ordered the Continental Illinois National Bank and Trust Company of Chicago, as trustee, to deliver certain securities to the defendant, Mildred Loring Wilson and to remove as a cloud on her title the lease and other instruments. The plaintiff appeals from said decree except such parts thereof as declare said lease terminated, the subject of the controversy, and to remove the clouds on the title of the defendant and establish and confirm title to said premises in the defendant, Mildred Loring Wilson.

The action was based upon the bill of complaint filed against Mildred Loring Wilson and others as defendants, to enjoin the Continental Illinois National Bank and Trust Company of Chicago, as trustee, from turning over to the defendant certain securities which had been deposited with the trustee under the provisions of a long term lease, which was subsequently amended, and which lease had been terminated by the defendant, Mildred Loring Wilson, the owner of the demised premises.

Answers were filed by the defendant and by the trustee and the bill was taken as confessed against certain other named defendants. Subsequently the defendant, Mildred Loring Wilson, filed her cross-bill, making the plaintiff and other parties defendants. By said cross-bill she prayed that the securities that were deposited with the trustee be delivered to her and that the lease and certain other instruments referred to in said cross-bill be removed as clouds on her title to said premises. Answers were filed to the cross-bill by the plaintiff and certain other cross defendants, and the cross-bill was taken as confessed against such defendants as defaulted in filing an answer.

The premises in question were situated at the northeast corner of Clark street and Haddock Place, about midway between Lake street and Wacker Drive, in the City of Chicago. The property has a frontage on

Clark street of 37½ feet and a depth on Haddock Place of 40 feet. On March 1, 1909, the trustees under a certain deed of trust, being the then owners of said premises, executed a lease demising said premises for a term of 99 years.

The lease provided for a rental of $3,000 a year, payable in quarterly instalments of $750 each on March 1st, June 1st, September 1st and December 1st of each year. It contained provisions requiring the lessee to pay all taxes, special assessments, water rates and other charges, and by the fourth article of the lease the lessee was required to keep upon the demised premises as security for the payment of the rent and the performance of the other covenants of the lease, either the building standing thereon at the time of the execution of the lease, or in place thereof a good and substantial first-class fire-proof or semi-fireproof building of modern design and of the latest and most approved construction, suitable to the location, of at least four stories in height and to cost and be worth not less than $20,000. Under a paragraph of the eighth article of the lease, it is provided that no building situated on the demised premises should be removed or torn down until the lessee had furnished to the lessor a good and sufficient bond with surety conditioned that the lessee would erect and complete a new building in accordance with the provisions of the lease. Article 12 of the lease provided that in the event of default by the lessee in the performance of any of the covenants of the lease, the lease might be terminated and provided the manner of such termination. The lease also provided that in case any building on the premises was damaged, it should be repaired or rebuilt by the lessee within one year from the date of such damage.

In April, 1927, William Waller, Jr., acquired the lessee's interest under the lease, and on May 15, 1928, the then owners of the premises and William

Waller, Jr., as lessee, entered into a supplemental agreement, which provided that the building then situated on the premises might be torn down and removed by the lessee at his cost and expense, and further provided that as security for the rents and performance of the covenants of the lease, the lessee on or prior to April 1, 1938, would commence the erection of a new building of the type specified in the lease, such building to be completed within two years after construction was commenced. There was a further provision in the contract that upon delivery of the supplemental agreement, the lessee would deposit with the Illinois Merchants Trust Company, now Continental Illinois National Bank and Trust Co., as trustee, securities having a market value of not less than $25,000, and would deposit with the trustee on April 1, 1933, additional securities having a market value in the amount of $5,000, and also would deposit a like amount on the first day of April of each year thereafter until and including April 1, 1937, unless prior to any such date the lessee should have commenced work upon a new building.

The securities were to be held by the trustee under the terms of the contract for the following purpose:

"In the event of the termination of said lease in accordance with the terms thereof, on account of default by the lessee, while any money or securities shall remain on deposit with the Trustee, the Trustee shall pay, turn over and assign the same to the lessors as and for the liquidated damages accruing to the lessors on account of such default, and such money or securities shall thereupon become the property of the lessors free and clear of any interest therein on the part of the lessee."

The contract also provides that the income from the securities was to be paid to the lessee, provided he was not in default in respect to any of the provisions of

the lease or the supplemental agreement, and further, that upon full completion of a new building and full payment therefor, the securities were to be paid to the lessee provided he was not then in default in respect to any of the provisions of the lease or the supplemental agreement.

The then lessee, William Waller, Jr. deposited the securities with the trustee, in accordance with the provisions of said supplemental agreement, which securities are claimed by the plaintiff as her property, and to have been merely loaned by her to her husband, William Waller, Jr. for the purpose of depositing the same under the terms of the agreement herein mentioned. Thereafter, in November, 1928, he destroyed and removed the building then upon the premises. The building was built in 1877, and at the time was producing no income and was of no particular value. The premises without any improvement thereon produce an annual income of $2,640.

It further appears from the record that the lessee never did commence the erection of the new building provided for by the lease and the supplemental agreement. It also appears that the supplemental agreement was prepared by the attorney for William Waller, Jr. and the negotiations which finally led to the agreement were had at the request of William Waller, Jr., and after agreement of the parties it was executed, and the securities were deposited as we have already indicated in this opinion.

It further appears that the lessee failed to pay the rent due on December 1, 1932, and also the instalment of rent due on March 1, 1933, and was in default in payment of the 1930 general tax, which amounted to $2,235.66, upon which penalties were accumulating, and the taxes for 1932 and 1933, and that he failed to deposit with the trustee on April 1, 1933, additional securities having a market value of $5,000.

As a result of the defaults, the defendant, Mildred Loring Wilson, who was at the time the owner of the fee simple title and the interest of the lessor in said premises, terminated said lease on May 1, 1933, and on May 26, 1933, recovered a judgment for possession against the lessee and his subtenant, and subsequent thereto this defendant has been in possession of said premises.

It was agreed by the parties to this litigation that at the time of the termination of the lease there was and still is on deposit with the trustee, subject to the terms of said agreement, securities evidencing a par value of $25,500, and in cash an amount in excess of $2,100, representing principal realized from the sale of certain securities so deposited and interest collected thereon, and that the market value of said securities, exclusive of said cash, on May 9, 1934, was $22,950.

It was further agreed by the parties that the securities so deposited with the trustee at the time of the termination of said lease, including the securities converted into cash, were loaned by the plaintiff to William Waller, Jr., for the purpose of depositing the same under said agreement, and that said securities were and now are the property of the plaintiff subject to the terms of said agreement and to all rights which said defendant Mildred Loring Wilson, may have therein by virtue of said agreement to the same extent as if said securities were owned by William Waller, Jr., at the time of the deposit of the same and he had made no assignment thereof; and that the securities were negotiable instruments payable to bearer, and that at the time of the deposit thereof, neither the lessors nor the depositary trustee had any notice or knowledge that said securities were not the absolute property of William Waller, Jr. As a matter of fact, it appears that on December 5, 1932, after William Waller, Jr. had made default in the payments required under the

terms of the lease and the supplemental agreement, he wrote the following letter to the lessors:

"I am sincerely disappointed at having to write the following letter. I know that this will be a blow to you personally and to your client Mrs. Wilson, but quite frankly, there is no way out. . . . I might just as well be honest and state that while this (an opinion about taxes) is my opinion, it is not the cause of my advising you that it is physically impossible for me to pay the rent called for in the lease."

And on the same day, he made this written statement:

"As stated in my other letter I will be very pleased to cooperate with the owner to facilitate the proper management of this property. . . .

"I really believe that some adjustment on these taxes will eventually be accomplished. As long as I am unable to continue my obligation on this lease I do not feel I should attempt to interfere with your own judgment in the matter. However I should be pleased to be advised as to what disposition you wish to make of this tax situation. . . ."

The plaintiff contends that the agreement of May 15, 1928, provides for a penalty and not for liquidated damages, and suggests that by the agreement of May 15, 1928, it is expressly provided that the securities were deposited for the faithful performance of every provision of the lease by the lessee—the provisions wherein the amounts were fixed or easy of ascertainment as well as those wherein the amounts were indefinite or difficult of ascertainment. This provision of the agreement is for the payment of a penalty rather than for the payment of liquidated damages.

It is also necessary to consider in connection with the suggestion made by the plaintiff that when the provisions for a penalty are unjust, unconscionable, unreasonable or oppressive, and the amount of the pen-

alty is out of proportion to the probable damages, the courts will not enforce them, and the circumstances under which the parties were induced to enter into this agreement will be of aid to the court in construing the provision to which complaint is made.

The language of the contract of May 15, 1928, is clear that upon the termination of the lease by default of Mr. Waller, the securities on deposit shall be used to liquidate the damages sustained by the lessor, and such securities by such default shall become the property of the defendant, the lessor in this case. The parties to the contract entered into its terms, and it was prepared at the instance of the lessee Waller by his attorney. By the terms of the agreement the lessee was privileged to remove the structure upon the land, which while in his possession was not kept in repair and the lessee was relieved of the expense of rebuilding and repairing the structure, due to a change in the grade of the street, which raised the sidewalk level about three feet. This change in the grade was made necessary by the Wacker Drive improvement. By the terms of the supplemental contract the liability was limited to $25,000. In the instant case, failure to pay rent and taxes due upon the premises constituted default. The lessor, however, is now without a building and by reason of the failure of the lessee, Mr. Waller, to construct the type of building provided for by the supplemental agreement, has suffered damages. Failure to construct the new building is an item of damages for which the lessor is protected by the provision in the supplemental contract. It is difficult to calculate the amount of the damages suffered by the lessor by reason of lessee's default. That he has suffered is not questioned, nor that the lessor is deprived of an improvement and is now in possession of vacant property.

The Supreme Court in the case of *Weiss v. United States Fidelity & Guaranty Co.*, 300 Ill. 11, makes a

pertinent statement upon the question of damages in saying:

"The question presented in this case for our determination is whether or not the contract by its terms, unaided by any extrinsic evidence, is to be held to provide liquidated damages or a penalty for the delay occasioned in completing the contract on time. Where the damages cannot be calculated in such a contract by market value nor by any precise pecuniary standard, or where, from the peculiar circumstances which the contract contemplates, there must be other uncertainties affecting the practical ascertainment of the amount of actual loss, the law favors any fair adjustment of damages by stipulation. If the contract does not afford any data from which the actual damages can be calculated this circumstance affords a reason for regarding the sum designated in it as liquidated damages."

This court will now consider whether the lessee's liability for a default in failing to comply with the terms of his contract is relieved by the termination of the lease and failure to pay rent. There can be no question that parties to a lease may agree that upon default by the lessee it will not relieve him from the payment of accruing sums provided for in the lease, notwithstanding the termination of the tenant's possession by judgment for possession recovered by the landlord for default of the tenant. This question has been passed upon by the Supreme Court in the case of *Central Investment Co. v. Melick*, 267 Ill. 564, which said:

"The case of *Grommes v. St. Paul Trust Co.*, 147 Ill. 634, is decisive of the second point raised. There was involved in that case a lease with practically the same provisions as those contained in the third clause of the lease here in question, and it was there said: 'There is nothing illegal or improper in an agreement

that the obligation of the tenant to pay all the rent to the end of the term shall remain notwithstanding there has been a re-entry for default, and if the parties choose to make such an agreement we see no reason why it should not be held to be valid as against both the tenant and his sureties. . . . It may not be strictly accurate or correct to call the money to be paid after re-entry rent, or to treat the lease as in force after a re-entry. But the parties have a right to fix the amount of the rent to accrue according to the terms of the lease as the amount of damages to be paid by the tenant in case of a breach of his covenants. It can make but little practical difference whether the sum agreed to be paid be called rent. or damages. It may be regarded as damages for the purposes of this suit. *Hall v. Gould,* 13 N. Y. 127; *Underhill v. Collins,* 132 id. 269.' Whether, as the plaintiff in error contends, by bringing its action of forcible detainer under our statute the defendant in error elected to determine the lease is unimportant under the holding in that case, as the amounts accruing after the re-entry are more properly regarded as the damages agreed upon between the parties in case of a breach of the covenants of the lease.'' See also *Heims Brewing Co. v. Flannery,* 137 Ill. 309.

In the instant case the parties agreed that the securities deposited by the lessee, Mr. Waller, should be assigned to the lessor in the event of the termination of the lease by the trustee for default of the lessee, in liquidation of the damages, and there is no legal obstacle to prevent an agreement being enforced.

As to the suggestion of the plaintiff that the lessee, Mr. Waller, by the supplemental agreement, a material part of the controversy, was not in default or obliged to commence the erection of a new building until April 1, 1938, and therefore no damages can be predicated upon this fact, the evident fact is that by the

lessee's default in payments and performance of the obligations incurred by the lease and the supplemental contract he, by legal procedure was dispossessed of the premises, and the plaintiff is not in a position to take advantage of this defense. Failure of the lessee to perform under the lease was not brought about by any act of the lessor, but solely because of lessee's failure to perform when he agreed with the lessor that "in the event of, and after the termination of the lease on account of default by the lessee, the amount on deposit with the trustee, the trustee shall pay and turn over to the lessor for the liquidated damages accruing to the lessor on account of such default.

The plaintiff failed to meet this by any evidence which would justify the trial court in holding that the plaintiff in this action was entitled to the securities, and in this proceeding the plaintiff had not only the burden of proof to establish the facts alleged in her bill of complaint, but also to show that the contract provided for a penalty, and not for liquidated damages. This position is fully sustained by the case of *Weiss v. United States Fidelity & Guaranty Co.*, 300 Ill. 11, and upon this question the court said:

"The burden of proof in such case is on the defendant to show that the contract provided for a penalty and not for liquidated damages, where there is nothing upon the face of the contract that requires the court to make the legal finding that the provision is for a penalty. Such a contract is *prima facie* evidence that the parties have stipulated and agreed on the actual amount of damages that ought to be recovered for a breach, and in the absence of evidence to the contrary the damages will be held to be liquidated damages."

If the relief prayed for by the plaintiff were granted it would be a violation of the terms of the lease, as well as of the supplemental agreement. The parties having

agreed, the court can do but one thing, and that is enforce the provision provided for in the lease and in the agreement of May 15, 1928.

The Supreme Court in the case of *Heims Brewing Co. v. Flannery*, 137 Ill. 309, which is pertinent upon the question now before this court, said:

"When all the provisions and circumstances of said contract are taken into consideration, there seems to be no reasonable doubt as to the intention of the parties that, the mere surrender of possession of the building leased, though made upon demand by the plaintiffs based upon a default in the payment of an installment of the rent, should not terminate said contract altogether, but only the defendant's right to the possession of the building leased, thus leaving all the other provisions of the contract, as well as the defendant's obligation to pay the stipulated consideration, in full force. The agreements on the part of the plaintiffs unaffected by the surrender, and which the defendant may still enforce constitute a substantial and material part of the consideration of the defendant's covenant to pay the $3,000, and it is not for the defendant to insist that a forfeiture, by reason of its own default, of only its leasehold interest in said building, leaving all the other provisions of the contract valid and enforceable, shall be held to work, in its favor, a total rescission."

The question of a lessee's breach of contract providing for the making of alterations is commented upon in the case of *Stogop Realty Co. v. National Surety Co.*, 207 N. Y. S. 785, 212 App. Div. 129, 154 N. E. 631, as follows:

"The lessee cannot avoid his contractual obligation to make alterations through breaching the contract. It is argued that the landlord should have sued for rent, and permitted the tenant to remain in possession and enjoyment of the premises, although no security for rent had been deposited. But the contention that the

landlord could not dispossess the tenant for nonpayment of rent, without destroying the obligation to complete the alterations, is untenable. A judgment for rent would probably have been worthless. To require that the tenant be allowed to continue in possession without paying rent, unless he were to be relieved of his obligation to complete the alterations is not required by any rule of law.''

To the same effect is the case of *In re Barton Co.,* 34 F. (2d) 517.

The trend of authorities upon this question seems to be that where the lessee made performance impossible because of a default, still damages may be recovered against him, notwithstanding the time for future performance is not at hand.

The admission of certain evidence is questioned by the plaintiff, and the contention is made that the court erred in admitting evidence regarding judgments against Mr. Waller and his liability on notes. Further, that the evidence admitted regarding the taxes for the years 1931, 1932 and 1933, was erroneous; and that letters written prior to the execution of the supplemental agreement were wholly immaterial upon the questions involved in this case.

Now, as to the evidence regarding judgments against the lessee and his liability on notes. It appears from the record that the plaintiff stipulated that there were certain unsatisfied judgments against William Waller, Jr., and that there were a number of trust deeds securing notes of his, most of which were given in part payment of the purchase price of real estate, and while admitting that such were the facts, the plaintiff suggested that they were immaterial to any issue before the court, and objected to their admission in evidence when offered.

Insolvency and liability to go on were relevant to the question of whether the lessee intended to or would

perform, and this is certainly evident from the letters of Mr. Waller in the record showing Mr. Waller's inability to perform, and his regret for the "blow" that he felt obliged to inflict upon Mrs. Wilson, and his desire to "assist" her, not only acknowledging that her contract was just and reasonable, but also admitting his inability to pay.

The evidence on the taxes which had accrued and were due at the time of the institution of this proceeding, and for which Mr. Waller was liable, was competent not only for the purpose of showing the many defaults, but also for the purpose of indicating continued defaults in the payment of taxes until the entry of the decree in 1934. There was no error in the admissibility of facts tending to establish defaulted payments.

It is also contended that the admission of a number of letters marked Wilson Exhibits 10 to 37, was erroneous, and that the court erred in allowing same to appear in the record. In examining this record we find that the defendant Wilson did not offer these exhibits for the purpose of varying or altering any provision of the contract, but for the purpose of showing that there was nothing oppressive or unreasonable about the contract of May 15, 1928, and that the amount of the deposit was not exorbitant or extravagantly large, and it would appear from these letters that Mr. Waller and his agents and attorneys suggested and proposed the contract and every item of the terms thereof and that the contract was written by Mr. Waller's attorneys and changed in no particular by the lessor. The rule seems to be that the circumstances surrounding the making of a contract may be inquired into for the purpose of determining whether the contract was fairly made and reasonable by its terms, and entered into by the parties with full understanding of its provisions.

Upon full consideration of the facts before us in this proceeding and the questions called to our attention, we are of the opinion that the court did not err in dismissing plaintiff's bill of complaint and in granting the relief prayed for by the defendant and cross plaintiff, Mildred Loring Wilson in her cross-bill.

For the reasons stated in this opinion, the decree is affirmed.

*Decree affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.