# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 13678.—Appellate Court reversed; municipal court affirmed.)
JULIUS WEISS, Plaintiff in Error, *vs.* THE UNITED STATES
FIDELITY AND GUARANTY COMPANY, Defendant in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 7, 1921.*

1. CONTRACTS—*burden is on defendant to prove that stipulated damages in a building contract provide for a penalty.* A building contract which provides for liquidated damages at so much per day for delay in the completion of the work is *prima facie* evidence that the parties have stipulated and agreed on the actual amount of damages that ought to be recovered for a breach, and the plaintiff need not allege actual damages from the delay but is entitled to rely on the contract tò show that the stipulated damages have resulted, and the burden is on the defendant to show that the contract provides for a penalty and not for liquidated damages.

2. SAME—*when parties may stipulate damages in building contract.* Where damages arising from delay in the completion of a building contract cannot be calculated by market value nor by any precise pecuniary standard, or where, from the peculiar circumstances which the contract contemplates, there must be other uncertainties affecting the practical ascertainment of the amount of actual loss, the law favors any fair adjustment of damages by stipulation, and the parties may provide in the contract the amount of compensation to be paid as stipulated damages for the delay.

3. SAME—*when amount stipulated for failure to complete contract will be regarded as liquidated damages.* Where a certain sum per day is specified to be paid for delay in completion of a building contract and there is nothing in the contract that discloses that the sum fixed is grossly excessive when the actual loss is considered, the amount so fixed shall be held as liquidated damages rather than as a penalty, in the absence of extraneous facts proved, particularly where the damages cannot be calculated by market value and where the contract does not afford any data from which the actual damages can be calculated.

4. SAME—*when stipulated damages will be regarded as a penalty.* Although damages stipulated in a contract are referred to as liquidated damages, if the provision is inserted *in terrorem* to insure prompt performance and the amount stipulated is so excessive that it appears on the face of the contract that it could not have been intended as a correct or approximately correct estimate of the actual damages, the sum agreed upon will be regarded as a penalty and not as liquidated damages.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. IRWIN R. HAZEN, Judge, presiding.

BENJAMIN P. ACKERMAN, (ALVIN E. STEIN, and WILLIAM FELDMAN, of counsel,) for plaintiff in error.

ZIMMERMAN, MACK & GARRETT, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Julius Weiss, plaintiff in error, recovered a judgment in the municipal court of Chicago in a first-class action against the United States Fidelity and Guaranty Company, defendant in error, in the sum of $3497.64. On appeal to the Appellate Court for the First District the judgment was reversed without remanding and a judgment entered in that court in favor of plaintiff in error for $872.64. A writ of *certiorari* was granted by this court for review of the record on error.

Plaintiff in error was the owner of a three-story building located at 837 West Twelfth street, in Chicago, con-

sisting of a store and two flats above it. Owing to the widening of Twelfth street by the city it became necessary to remodel this building, and accordingly a contract was entered into between the plaintiff in error and the Oscar Osberg Company on October 11, 1916, providing that in consideration of an agreed price of $5700 the Oscar Osberg Company would remodel the building according to the plans and specifications of a named architect and the company would furnish a surety bond in the sum of $5700. In case the company should commit any breach of the covenants or agreements in the contract, it was to be optional with the plaintiff in error to terminate the contract and engage another contractor to complete the job, and the company was to be liable for any and all damages that might ensue as the result of such breach, and such damages were to be deducted from the part of the contract price that should remain due the company. The contract also contained this clause: "It is further agreed by and between the parties that the work upon said job is to be commenced immediately and it is to be finished not later than January 15, 1917, and for every day that it shall take the said party of the first part after January 15, 1917, to complete the said job, the said party of the first part shall pay as liquidated damages to the said party of the second part the sum of fifteen ($15) dollars per day." On the same day a bond was executed to plaintiff in error by the Oscar Osberg Company as principal and the defendant in error as surety in the sum of $5700 for the faithful performance of the contract on the part of the Oscar Osberg Company.

Plaintiff in error's statement of claim set up *in hæc verba* the building contract and the bond signed by the defendant in error as surety, and alleged that the contracting company failed to complete the building contract by January 15, 1917, and continued to work on the building until April 28, 1917, and then refused to complete the contract; that by and with the consent of the defendant in error the plaintiff in

error completed the building through other contractors and performed all the terms and conditions of the contract to be performed; that the building was completed July 10, 1917, at an additional cost to plaintiff in error above the contract price of $907.64, and that he is entitled to recover of defendant in error said last sum and $15 per day for the 175 days from January 15, 1917, to the completion of the contract, July 10, 1917.

In its affidavit of merits defendant in error set up as a defense that plaintiff in error failed to exercise his option to terminate the contract and to use diligence to avoid loss thereunder; that he did not suffer damages of $15 per day for failure to complete the work on time and waived the provision as to completion of the contract and requested the contractor to continue the work; that he failed to demand architect's certificates of work performed; that there were alterations causing delay for which no credit was given; that plaintiff in error was a party to the failure to complete on time; that he did not finish the job with the consent of the defendant in error; that defendant in error did not execute bonds for performance of the contract at 837 West Twenty-first street, and that plaintiff in error failed to keep the agreement to be kept by him but was guilty of conduct relieving the defendant in error of any and all liability.

The trial was before the court without jury. Plaintiff in error proved his contract as set out in his statement of claim and the execution and delivery of the bond by defendant in error. He also proved the breach of the building contract by the contractor and his abandonment of the same as set forth in the statement of claim. He further proved that in December, 1916, he notified defendant in error that the contractor would not be able to complete the building by January 15, 1917, as agreed, and that defendant in error by one of its agents thereafter visited the contractor and requested it to hurry up and complete the contract as soon as possible; that after the contractor abandoned the contract

plaintiff in error notified defendant in error thereof and requested it to complete the contract; that it declined so to do and notified plaintiff in error to complete the contract, and that in the event the contract price should not be sufficient to pay all claims for labor and material it would then consider any claim which he might have on it and would pay such amount as it might be liable for in accordance with the provisions of its bond; that plaintiff in error then completed the contract and paid all liens and claims by and with the consent of defendant in error, including the claim of the subsequent contractor, and was required to pay out, in addition to the contract price for repairing the building, the sum of $872.64, and was delayed 175 days in the completion of his building by the refusal of the contractor to complete it. Defendant in error introduced no evidence whatever. It submitted no propositions of law to the court, except at the close of plaintiff in error's evidence it made an oral motion that the court make a finding for it. Thereupon the plaintiff in error introduced further evidence, but defendant in error did not renew its motion or make any other motion whatever.

The trial court gave judgment for $872.64,—the amount paid by plaintiff in error in excess of the contract price,— and in addition thereto the further sum of $2625 as agreed liquidated damages for 175 days at $15 per day for failure to complete the building in the time agreed. The Appellate Court held that the provision of the contract for $15 per day for every day that it should take the contractor to finish the building after January 15, 1917, was for a penalty and not recoverable by plaintiff in error and gave judgment for the actual damages proved, $872.64, with this finding of fact: "We find as an ultimate fact in this case that the plaintiff, Julius Weiss, was damaged in the sum of $872.64 by reason of the failure of the Oscar Osberg Company to carry out its building contract with him, for which sum the United States Fidelity and Guaranty Company is liable as surety

on the bond in question." The Appellate Court by this finding has made no finding contrary to the facts found by the trial court. This court is therefore bound by the facts found by the trial court.

The evidence introduced by plaintiff in error did prove the statement in the affidavit of merits that defendant in error did not execute a bond for performance of the contract at 837 West Twenty-first street, but it did execute a bond for the performance of the contract at 837 West Twelfth street. The contractor's contract by mistake described the property as at 837 West Twenty-first street. Defendant in error was informed of the mistake in the contract by plaintiff in error, who offered to have the contract corrected in that particular, but defendant in error waived this correction by informing him that it was not necessary to have the contract corrected and gave the bond describing the property correctly, therefore there is nothing substantial or meritorious to this defense. The only question properly presented for our decision is whether or not the contract provided for liquidated damages or a penalty for a breach of the contract,—a question of law.

Where a contract provides for liquidated damages at so much per day for delay in the performance of a building contract beyond the time fixed for completing the building, as this contract does, it is not necessary in an action for breach to allege actual damages from such delay, as plaintiff is entitled to rely on the contract to show that damages at the rate stipulated will result from the breach. The burden of proof in such case is on the defendant to show that the contract provided for a penalty and not for liquidated damages, where there is nothing upon the face of the contract that requires the court to make the legal finding that the provision is for a penalty. Such a contract is *prima facie* evidence that the parties have stipulated and agreed on the actual amount of damages that ought to be recovered for a breach, and in the absence of evidence to the contrary the

damages will be held to be liquidated damages. *Selby* v. *Matson,* 137 Iowa, 97; *Harper* v. *Tidholm,* 155 Ill. 370.

The question presented in this case for our determination is whether or not the contract by its terms, unaided by any extrinsic evidence, is to be held to provide liquidated damages or a penalty for the delay occasioned in completing the contract on time. Where the damages cannot be calculated in such a contract by market value nor by any precise pecuniary standard, or where, from the peculiar circumstances which the contract contemplates, there must be other uncertainties affecting the practical ascertainment of the amount of actual loss, the law favors any fair adjustment of damages by stipulation. If the contract does not afford any data from which the actual damages can be calculated this circumstance affords a reason for regarding the sum designated in it as liquidated damages. (1 Sutherland on Damages,—4th ed.—sec. 290.) The building in this case, as already disclosed, contained a store and two flats, and the contract was not for building out and out this store and two flats but was a contract for remodeling the same by reason of the widening of Twelfth street. The value of the old building before it was remodeled, or the value of it after this contract was completed, does not appear in the record. We are not authorized to presume that the building, when completed, would only be of the value, or of the near value, of the cost price for remodeling it. · The building, when finished, might be worth many thousand dollars more than the contract price. The amount of rent paid or to be paid for this store and the flats does not appear in the record. It is entirely reasonable to suppose, as contended by plaintiff in error, that the parties contemplated that a failure to complete the job on time would result in a loss of renters and of the rents of the building, not only for the actual time the building was delayed in completion but also for some considerable time thereafter. The delay in completion might also subject the owner to liability to his tenant of the store

for enforced suspension or interruption of his business. There are many reasons that might be suggested why it might have been important to the owner to have this building completed on time, to insure him rent and to save him from damages suffered by his tenants, and we think that it was ·within the province of the parties to determine the amount of compensation to be paid for the delay as stipulated damages.

Another reason for holding the contract in question provided for liquidated damages rather than a penalty is the fact that the damages are fixed at $15 per day and not a lump sum for all the delay. There certainly would never have been any contention between the parties, if the actual delay had not exceeded five or ten days, that the amount fixed was so excessive as to be regarded in law as a penalty rather than as liquidated damages. Of course, the longer the delay the more reason there would be for saying that the damages are excessive and in the nature of a penalty, but the contract cannot be interpreted in this way according to the actual time of the delay. The natural conclusion is that the parties did not contemplate very much, if any, delay in the completion of this work, and in passing upon the question now before us we are to interpret it according to that intention. The weight of authority in this country is to the effect that in contracts for building houses or other structures, wherein a sum certain per day is specified for delay in completion, and there is nothing in the contract that discloses that the sum fixed is grossly excessive when the actual loss is contemplated, the amount so fixed shall be held as liquidated damages in the absence of extraneous facts proved, and particularly where the damages cannot be calculated by market value or by any precise pecuniary standard when the whole contract is considered. (Sutherland on Damages, *supra.*) In passing upon just such a contract as the one now before us, the Supreme Court of Alabama in the case of *Stratton* v. *Fike*, 166 Ala. 203, very

aptly said: "While this may be full large, [$10 per day,] and, of course, could be extended to such length of time as to become grossly excessive, it would not become burdensome without fault or excuse. On the other hand, the amount agreed on for one or a dozen days might be wholly inadequate. The owner may have lost a good renter by that delay, or for any other probable result might suffer damages in excess of the amount agreed upon. The fact that the delay in the particular case was long continued to a time that may be said to be unreasonable or unusual cannot be looked to in construing the contract."

This court has followed the rule that the stipulation for a definite sum per day in contracts such as this is to be regarded as meaning liquidated damages and not as a penalty. (*Poppers* v. *Meagher,* 148 Ill. 192; *Hennessy* v. *Metzger,* 152 id. 505; *Parker-Washington Co.* v. *City of Chicago,* 267 id. 136.) On the other hand, although the damages fixed by the contract may be referred to as liquidated damages, if the provision is in the nature of a penalty and inserted *in terrorem* to insure the prompt payment of the sum agreed, the damages fixed are to be regarded as a penalty and not as liquidated damages; and in such case the damages usually fixed are a gross sum, and are so manifestly excessive as to clearly appear on the face of the contract to be intended as a penalty and not as a correct or approximately correct estimation of the actual damages. *Goodyear Co.* v. *Selz, Schwab & Co.* 157 Ill. 186; *Westfall* v. *Albert,* 212 id. 68; *Radloff* v. *Haase,* 196 id. 365.

The result of our conclusion is that the Appellate Court erred in holding that the contract provided for a penalty and not for liquidated damages, and in reversing the judgment of the trial court.

The judgment of the Appellate Court is therefore reversed and the judgment of the municipal court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of municipal court affirmed.*