# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670

---

| | |
|---|---|
| Appellate Court Caption | FARID KARIMI and MAHMOBAH KASHANI, Plaintiffs-Appellants, v. 401 NORTH WABASH VENTURE, LLC, a Delaware Limited Liability Company; TRUMP CHICAGO MANAGING MEMBER LLC, a Delaware Limited Liability Company; and DEUTSCH BANK TRUST COMPANY AMERICAS, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2670 |
| Filed | July 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking a declaration that the condominium purchase agreement plaintiffs entered into with defendants was still in effect when the condominium was sold to a third party, the trial court properly dismissed plaintiffs' complaint alleging breach of contract, unjust enrichment, conversion and that the liquidated damages provision was unenforceable, since a declaratory judgment claim was not the proper method to present breach of contract allegations, defendants properly terminated the contract before selling the unit to a third party, the claims that defendants improperly retained the earnest money and earned interest were based on conclusions of law or fact that were not supported by specific factual allegations, unjust enrichment is not applicable to a claim based on a specific contract, the earnest money at issue was not a proper subject of a conversion claim, and the liquidated damages provision was not an unenforceable penalty. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2009-CH-37433; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John A. Kukankos, P.C., of Chicago (John A. Kukankos, of counsel), for appellants. |
| | Novack & Macey LLP, of Chicago (Stephen Novack, John F. Shonkwiler, and Rebekah H. Parker, of counsel), for appellees. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiffs Farid Karimi and Mahmobah Kashani appeal the trial court's dismissal of their first amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)). On appeal, plaintiffs contend the trial court erred in dismissing counts I through VI of their complaint.[1] In their complaint, plaintiffs sought a declaration that the condominium purchase agreement they entered into with defendants was still in effect when defendants sold the condominium unit to a third party and that defendants improperly retained as liquidated damages the earnest money and earned interest. Plaintiffs also alleged breach of contract, unjust enrichment, and conversion. Plaintiffs further argued that the liquidated damages provision in the purchase agreement is unenforceable because it fails to set a certain sum as liquidated damages and effectively operates as a penalty. For the reasons hereinafter set forth, we affirm.

¶ 2                            JURISDICTION

¶ 3     The trial court entered a final judgment in the instant case on August 5, 2010, and

---

[1]Although plaintiffs argue in their brief that they are appealing the dismissal of counts II through VII, in the argument section they address counts I through VI without mention of count VII. Therefore, plaintiffs have waived review of the dismissal of count VII pursuant to Illinois Supreme Court Rule 341(h)(7). Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006).

plaintiffs filed their notice of appeal on September 3, 2010. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                    BACKGROUND

¶ 5        The following facts are taken from plaintiffs' first amended complaint and attached exhibits. On or about September 25, 2003, plaintiffs entered into an agreement with defendants to purchase condominium 46A (later renamed 47A) and parking spaces 253, 254 and 255 at the Trump International Hotel and Tower. The total purchase price was $2,188,464 and pursuant to the purchase agreement, plaintiffs deposited $328,269.60 (15% of the purchase price) as earnest money. The agreement provided an anticipated closing date of late 2008.

¶ 6        On September 5, 2008, defendants notified plaintiffs that the unit would be substantially completed and ready to close on October 6, 2008. However, the closing was extended to May 15, 2009, due to plaintiffs' inability to obtain financing. Plaintiffs failed to close on May 15, 2009, and in a letter dated July 6, 2009, defendants declared:

>     "The time and date for closing and the applicable cure period per the default notice has elapsed and Purchaser has not closed on the unit. Therefore, Purchaser is in breach of and in default under the Purchase Agreement. Consequently, Seller hereby terminates the Purchase Agreement."

Whereupon, defendants retained the earnest money and earned interest as liquidated damages. In November 2009, defendants subsequently sold the unit and one less parking space to a third party for $2.5 million.

¶ 7        Plaintiffs filed a seven-count first amended complaint. Count I alleged that the purchase agreement was still in effect and sought a declaration of the parties' rights under the agreement; count II alleged breach of contract; count III sought a declaration that the earnest money deposit should be returned; count IV sought a declaration, in the alternative, that the liquidated damages clause is unenforceable; count V alleged unjust enrichment; count VI alleged conversion; and count VII alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)). Defendants filed a motion to dismiss pursuant to section 2-615, and on August 5, 2010, the trial court granted the motion and dismissed the complaint with prejudice. Plaintiffs filed this timely appeal.

¶ 8                                     ANALYSIS

¶ 9        On appeal, plaintiffs challenge the trial court's dismissal of counts I through VI. A motion to dismiss pursuant to section 2-615 challenges the legal sufficiency of the complaint. *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 846 (2009). In ruling on the motion, the court accepts as true all well-pleaded facts in the complaint as well as all reasonable inferences drawn therefrom. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). Any exhibits attached to the complaint are also considered. *Beahringer v. Page*, 204 Ill. 2d 363, 365 (2003). Dismissal

under section 2-615 is proper if the pleadings and attachments, when construed in the light most favorable to the plaintiff, clearly show that plaintiff cannot prove any set of facts that would entitle him to relief. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). Review of the trial court's dismissal of plaintiff's complaint pursuant to section 2-615 is *de novo*. *Doe v. McKay*, 183 Ill. 2d 272, 274 (1998).

¶ 10    Counts I and III, respectively, request the court to issue a declaratory judgment. A claim for declaratory judgment, however, is not the proper vehicle for presenting what are, in essence, plaintiffs' breach of contract allegations. The declaratory judgment process allows a court to address a controversy after a dispute arises but before steps are taken that give rise to a claim for damages or other relief. *Beahringer*, 204 Ill. 2d at 372-73. Although a declaratory judgment action is proper to determine the parties' existing rights, a court may dismiss such an action if "a party, seeks to enforce his rights after the fact." *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 314 (1991). Here, defendants have already terminated the purchase agreement and sold the unit to a third party. Plaintiffs are seeking "to enforce [their] rights after the fact" and these allegations are properly breach of contract allegations. The dismissal of the declaratory judgment counts was proper on that basis.

¶ 11    Even on the merits, plaintiffs' allegations in counts I through III fail to state a cause of action upon which relief can be granted. Count I essentially contends that defendants breached the purchase agreement by selling the unit to a third party while the agreement was still in full force and effect. Count II, alleging straightforward breach of contract, echoes count I and adds that defendants further breached the agreement by failing to maintain plaintiffs' earnest money in an interest-bearing account. Count III alleges that defendants failed to return plaintiffs' earnest money and earned interest pursuant to paragraph 12 of the purchase agreement. Paragraph 12(a) states as follows:

> "Time is of the essence with regard to Purchaser's obligations and covenants hereunder. In the event of a default or breach of this Purchase Agreement by Purchaser, Seller shall notify Purchaser of such breach or default and of the opportunity, which shall be given the Purchaser, to remedy such breach or default within twenty (20) days after the date such notice was received. If Purchaser fails to remedy such breach or default within twenty (20) days after receipt of Seller's notice, then, subject to the limitations set forth below, Seller may terminate this Purchase Agreement and, as its sole and exclusive remedy upon termination, retain as liquidated damages from Purchaser an amount equal to the sum of (i) the amount set forth *** required to be paid as an Earnest Money deposit and (ii) all amounts paid or to be paid by Purchaser to Seller for any other services or work performed or to be performed by Seller. *** In accordance with Section 1703(d) of the Interstate Land Sales Full Disclosure Act, if Seller is otherwise entitled to the liquidated damages described above, Seller shall return to Purchaser amounts paid to Seller (excluding interest paid under the Purchase Agreement) in excess of: (x) 15% of the Purchase Price (excluding any interest owed under the Purchase Agreement) or (y) the amount of Seller's actual damages, whichever is greater."

¶ 12    Plaintiffs' first amended complaint states that defendants first notified plaintiffs that the

unit would be ready to close on October 6, 2008. Due to plaintiffs' inability to obtain financing, the closing was extended to May 15, 2009. Plaintiffs, however, failed to close on that date and on July 6, 2009, more than 20 days later, defendants sent a letter to plaintiffs terminating the purchase agreement. After terminating the agreement, defendants sold the unit to a third party. The facts alleged by plaintiffs show that defendants properly terminated the purchase agreement pursuant to paragraph 12(a) before selling the unit to a third party. Accordingly, plaintiffs' allegation that the purchase agreement was in full force and effect when defendants sold the unit to a third party (counts I and II) is incorrect and plaintiffs cannot prove any set of facts entitling them to relief.

¶ 13    The remaining allegations contained in counts II and III also fail to state a cause of action upon which relief can be granted. In support of their contentions, plaintiffs merely conclude that "[u]pon information and belief, the account into which the Trump defendants placed the Earnest Money Deposit failed to pay any interest for a period of time" (count II); and, interpreting the purchase agreement against defendants, the liquidated damages provision in paragraph 12 requires the return of plaintiffs' earnest money and earned interest because defendants suffered no damages (count III). In opposing a motion to dismiss pursuant to section 2-615, plaintiffs cannot rely on mere conclusions of law or fact unsupported by specific factual allegations. *Dloogatch*, 396 Ill. App. 3d at 850. Dismissal of counts I through III of plaintiffs' complaint was proper.

¶ 14    Count V of plaintiffs' first amended complaint alleges unjust enrichment. Under this theory of recovery, plaintiffs must show that defendants "voluntarily accepted a benefit which would be inequitable for [them] to retain without payment." *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992). However, where a specific contract governs the relationship between the parties, the doctrine of unjust enrichment is inapplicable. *La Throp v. Bell Federal Savings & Loan Ass'n*, 68 Ill. 2d 375, 391 (1977). If the complaint expressly alleges a contract, the count alleging unjust enrichment is properly dismissed. *Hartigan*, 153 Ill. 2d at 497. Here, plaintiffs' first amended complaint states that the parties executed a purchase agreement. Count V does not argue in the alternative that the contract was invalid, no longer in full force and effect, or otherwise unenforceable. Instead, it incorporates the allegations of counts I through IV, which allege the existence of an enforceable purchase agreement. Therefore, the trial court properly dismissed count V of plaintiffs' first amended complaint.

¶ 15    Count VI alleges conversion based on defendants' wrongful possession and ownership of plaintiffs' earnest money and earned interest. Conversion is the improper "deprivation of one who has a right to the immediate possession of the object unlawfully held." *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill. App. 3d 207, 213 (1982). The subject of conversion must be "an identifiable object." *In re Thebus*, 108 Ill. 2d 255, 260 (1985). Money may be the subject of conversion, but only if it is shown that the money "at all times belonged to the plaintiff and that the defendant converted it to his own use." *Thebus*, 108 Ill. 2d at 261. The general rule, however, is that an action for conversion may not be maintained for money representing a general debt or obligation. *Thebus*, 108 Ill. 2d at 261. The purchase agreement states that "[e]arnest money so paid and deposited shall be held for the mutual benefit of Seller and Purchaser." Thus, the earnest money at issue here does not belong to plaintiffs at

all times. Furthermore, it represents plaintiffs' obligation to fulfill the contract. Since the earnest money here is not the proper subject of a conversion claim, dismissal of count VI was proper.

¶ 16 The dismissal of count IV presents a more complicated issue as it concerns the validity and enforceability of the liquidated damages clause contained in paragraph 12(a) of the purchase agreement. No fixed rule applies to all liquidated damages provisions, and courts must evaluate each one on its own facts and circumstances. *Jameson Realty Group v. Kostiner*, 351 Ill. App. 3d 416, 423 (2004). In general, under Illinois law a liquidated damages provision is "valid and enforceable in a real estate contract, when: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove." *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 749-50 (1992). Parties often include liquidated damages provisions in real estate transactions "to avoid the difficulty of ascertaining and proving damages by such methods as market value, resale value or otherwise." *Siegel v. Levy Organization Development Co.*, 182 Ill. App. 3d 859, 861 (1989).

¶ 17 In *Siegel*, we upheld as enforceable a clause in the purchase agreement providing that in case of buyer default all sums theretofore paid by the buyer, including earnest money, would be forfeited as liquidated damages. *Siegel*, 182 Ill. App. 3d at 862. We found that damages in the amount of $320,000 earnest money paid toward the purchase of a $1.6 million condominium was reasonable in light of losses that might have been anticipated at the time of contracting and the difficulty of ascertaining losses in the event of a breach. *Id.*

¶ 18 Plaintiffs first contend that paragraph 12(a) is unenforceable because it fails to set a certain sum as liquidated damages. Plaintiffs argue that a set sum evidences the parties' agreement on the settlement of damages, and paragraph 12(a)'s reference to amounts paid for other services or work performed by defendants, in addition to the earnest money, shows that they did not agree to a liquidated sum. However, in a real estate contract liquidated damages specified as " 'all sums theretofore paid to Seller' " including earnest money and payment for extras, have been upheld as "reasonable in light of any losses that could have been anticipated at the time of the contract." *Siegel*, 182 Ill. App. 3d at 862. See also *Morris v. Flores*, 174 Ill. App. 3d 504, 507 (1988) (enforceable liquidated damages clause provided that plaintiff would forfeit all money deposited under the contract, including earnest money). In their brief, plaintiffs acknowledge that "[a]t the time of contracting, it remained possible that Plaintiffs would, during the more than five-year period from execution of the Purchase Agreement to completion of the construction of the Unit, pay additional deposits for other services or work" performed by defendants. Plaintiffs, then, understood and agreed that the earnest money and additional deposits were the amount designated as liquidated damages in paragraph 12(a) when they executed the purchase agreement, and their argument that the parties did not agree to a set sum is not persuasive.

¶ 19 Plaintiffs dispute the applicability of *Siegel*, arguing that despite language in the liquidated damages provision referring to "all sums theretofore paid," the *Siegel* court's holding focused only on the earnest money deposited. The provision in *Siegel* stated that in

case of a purchaser breach, " 'all sums theretofore paid to Seller (including without limitation earnest money and payments for Extras) by Purchaser shall be forfeited as liquidated damages.' " *Siegel*, 182 Ill. App. 3d at 862. The *Siegel* court approved of the trial court's reasoning evidenced as follows:

" '[I]t says including *without limitation*, but it does refer to the earnest money deposit, so it's not only just saying all sums but it seems to me that the parties are specifically focusing in on *at least* the earnest money which is set forth in the contract and that is clear.' " (Emphasis added.). *Siegel*, 182 Ill. App. 3d at 862.

Contrary to plaintiffs' contention, the *Siegel* court did not interpret the liquidated damages amount to include only the earnest money deposit and not " 'all sums.' " *Id.* Rather, it reasoned that the provision adequately stipulated an amount of damages despite the " 'without limitation' " language because the parties clearly intended to make the earnest money amount, which was clearly set, central to the provision. *Id.* Here, as in *Siegel*, the set sum of plaintiffs' earnest money was the focus of the liquidated damages amount, and the inclusion of payments for other work or services did not render the amount uncertain at the time of contracting.

¶ 20    Plaintiffs also contend that the liquidated damages provision is unenforceable because extrinsic evidence is required to determine the actual amount. As support, plaintiffs cite *Hamming v. Murphy*, 83 Ill. App. 3d 1130 (1980), and *First National Bank & Trust Co. of Barrington v. Maas*, 26 Ill. App. 3d 733 (1975). However, both cases involved installment contracts for the purchase of land and the subsequent forfeiture of installment payments, neither of which is at issue here. Furthermore, they do not support plaintiffs' contention that a provision requiring the introduction of outside evidence is not adequately liquidated. The court in *Hamming* noted that under Illinois law, in order for the seller to retain all installment payments made as liquidated damages there must be proof that the amount did not exceed the fair rental value of the property. *Hamming*, 83 Ill. App. 3d at 1136. Since no such evidence was presented at trial, the court in *Hamming* held that the cause would be remanded to the trial court to determine whether the installment payments represented the fair rental value of the property. *Hamming*, 83 Ill. App. 3d at 1137. See also *Maas*, 26 Ill. App. 3d at 739 (appellate court upheld the liquidated damages provision where the evidence showed the amount did not exceed the fair rental value of the property). In both cases, the courts considered evidence outside the information contained in the contracts to determine the liquidated amount.

¶ 21    Plaintiffs' final contention is that the liquidated damages provision is an unenforceable penalty. Unlike the provisions upheld in *Siegel* and *Morris* discussed above, paragraph 12(a) refers to actual damages in determining the liquidated damages amount. The question is whether that reference is fatal to the enforcement of the liquidated damages provision. A provision that allows defendants the option to receive liquidated damages or seek actual damages is unenforceable as a penalty. *Grossinger*, 240 Ill. App. 3d at 752. In *Grossinger*, the purchase contract provided that if the plaintiff caused the contract to terminate, " 'the earnest money shall be forfeited to the [defendant] to be retained by the [defendant] as liquidated damages, or at [defendant]'s option, [defendant] may exercise any other remedy available at law.' " *Grossinger*, 240 Ill. App. 3d at 740. This court held that the provision

-7-

was unenforceable because it penalized the plaintiff by giving defendants a minimum recovery regardless of actual damages, and also allowed defendants to disregard liquidated damages if actual damages exceeded the specified amount. *Grossinger*, 240 Ill. App. 3d at 751. See also *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 311-13 (2000) (held that a liquidated damages provision giving the seller the option to claim the earnest money as liquidated damages is unenforceable as a penalty). Such a provision negates the purpose of liquidated damages, which is to provide parties with an agreed-upon, predetermined damages amount when actual damages may be difficult to ascertain. *Hickox v. Bell*, 195 Ill. App. 3d 976, 987-88 (1990).

¶ 22    Despite its reference to actual damages, paragraph 12(a) does not give defendants the option to seek actual damages. Although a calculation of actual damages may be necessary to determine a liquidated damages amount, defendants can receive no more than the amount plaintiffs have deposited pursuant to the agreement, even if actual damages prove greater than the sum deposited. Furthermore, unlike the clauses in *Grossinger* and *Catholic Charities*, no provision in the agreement allows defendants the option to pursue actual damages in case of plaintiffs' breach. As discussed above, plaintiffs had knowledge of and agreed to the amounts included as liquidated damages at the time of contracting, and defendants have no option to disregard that amount. The liquidated damages provision at issue here is not an unenforceable penalty.

¶ 23    Plaintiffs also argue that paragraph 12(a) operates as a penalty because defendants suffered no actual damages. Instead, defendants sold the unit for approximately $400,000 more than the contract price contained in the purchase agreement with plaintiffs. Citing *Penske Truck Leasing Co. v. Chemetco, Inc.*, 311 Ill. App. 3d 447 (2000), plaintiffs argue that "when a party receives both substantial liquidated damages and windfall profits, the court will consider the damages unreasonable." *Penske*, however, concerned a provision with alternate methods of computing liquidated damages dependent on whether the nondefaulting party retained or sold the leased trucks at issue in the contract. *Penske*, 311 Ill. App. 3d at 455. The court in *Penske* held that allowing the plaintiffs to retain the trucks, calculate liquidated damages based on that retention, then shortly thereafter sell the trucks at a profit would constitute unreasonable damages. *Penske*, 311 Ill. App. 3d at 457. It reasoned that "it was never the intention of the parties to permit plaintiff to proceed under the method of recovery used when plaintiff decides to retain the vehicles but later sells the vehicles and reaps a windfall in the process." *Penske*, 311 Ill. App. 3d at 457. Unlike the liquidated damages provision in *Penske*, paragraph 12(a) does not contain alternate methods for computing damages depending on whether defendants retain or sell the condominium unit at issue. Defendants here properly claimed liquidated damages for plaintiffs' default pursuant to the purchase agreement. Furthermore, unlike the provision in *Penske*, under the terms of this agreement whether defendants eventually sold the unit, and any proceeds from a sale, are irrelevant to the liquidated damages issue.[2]

---

[2]The parties also argue whether the following federal cases or cases from other jurisdictions, *Yockey v. Horn*, 880 F.2d 945 (7th Cir. 1989), *Vanderbeek v. Barefoot*, 226 F. App'x 3d 209 (3d Cir. 2007), and *Wasserman's Inc. v. Township of Middletown*, 645 A.2d 100 (N.J. 1994), support

¶ 24    A term fixing unreasonably large liquidated damages, however, may be unenforceable as a penalty on public policy grounds. *Penske*, 311 Ill. App. 3d at 454. The reasonableness of the amount, though, depends not on the actual damages suffered by the nonbreaching party, but on whether the amount reasonably forecasts and bears some relation to the parties' potential loss as determined at the time of contracting. *Jameson*, 351 Ill. App. 3d at 423. Courts have considered earnest money representing up to 20% of the purchase price a reasonable sum as liquidated damages. See *Siegel*, 182 Ill. App. 3d at 860. Here, the earnest money represented 15% of the purchase price, and plaintiffs acknowledge they did not make further payments for other services or work. Liquidated damages in the amount of 15% of the purchase price is a reasonable amount considering the potential loss each party faced at the time of contracting. *Siegel*, 182 Ill. App. 3d at 862. Furthermore, plaintiffs' argument concerning defendant's sale of the unit for $400,000 more than the contract price proves the validity of the liquidated damages provision because it shows how uncertain and difficult it was for the parties to ascertain actual damages at the time of contracting. See *Jameson*, 351 Ill. App. 3d at 427.

¶ 25    Finally, plaintiffs contend that in a case such as the one at bar, where the nonbreaching party suffered no actual damages but instead reaped a handsome profit, enforcing the liquidated damages clause would be "obnoxious." As support, plaintiffs cite *Radloff v. Haase*, 196 Ill. 365 (1902). *Radloff* concerned a liquidated damages provision contained within a covenant not to compete. *Radloff*, 196 Ill. at 366. The defendant sold his bakery to the plaintiff and in the contract promised not to engage in the bakery business within a five-block radius. *Id*. The contract further stated that the defendant agreed to pay a sum of $2,000 if he violated the agreement. *Id*. The plaintiff subsequently sold the bakery to a third party and moved out of Illinois. *Id*. at 366-67. Approximately one year later, the defendant opened a bakery business across the street from his former business without the plaintiff's consent. *Id*. at 367. The plaintiff brought suit, seeking damages from defendant's violation of the initial contract although he presented no evidence of actual damages from the breach. *Radloff*, 196 Ill. at 367. Our supreme court noted that the terms of the contract in *Radloff* did not make clear whether the damages provision contained therein was a liquidated damages provision or a penalty. *Id*. In determining whether or not the amount specified was liquidated damages, the court in *Radloff* reasoned that "the idea of the courts is to ascertain, if possible, the actual damages sustained, and if it is possible to ascertain the actual damages, or if the amount of liquidated damages mentioned in the contract is exorbitant, the court will construe the amount as a penalty, rather than as liquidated damages." *Radloff*, 196 Ill. at 368. It found that the plaintiff "has not been engaged in the bakery business at Chicago a single day since [the defendant] re-entered the restricted territory, nor has he been in any way injured by the action of [the defendant] *** and to construe this contract as liquidated damages would work absurdity and oppression." *Radloff*, 196 Ill. at 369.

---

plaintiffs or defendants. These cases state the Restatement (Second) of Contracts' position that the reasonableness of a liquidated damages provision may be determined either at the time of contracting or at the time of injury. Since Illinois law adequately addresses the issue, we need not consider these cases any further.

¶ 26    Unlike the contract in *Radloff*, the purchase agreement here concerns a real estate transaction with a provision explicitly designating an amount as liquidated damages. Where damages for breach of contract would be uncertain or difficult to calculate, our supreme court has upheld a reasonable amount stipulated at the time of contracting as liquidated damages without regard to actual damages. See *Weiss v. United States Fidelity & Guaranty Co.*, 300 Ill. 11, 17 (1921). In *Weiss*, the plaintiff contracted with the defendant to remodel a three-story building he owned. *Weiss*, 300 Ill. at 12-13. The contract provided that the project would be completed no later than January 15, 1917, and defendant would pay as liquidated damages $15 per day for each day thereafter until completion. *Id*. at 13. The defendant subsequently failed to complete the project and the plaintiff hired another contractor who finished the job on July 10, 1917, at an additional cost of $872.64. *Weiss*, 300 Ill. at 14-15. The supreme court held that under the terms of the contract, the plaintiff was entitled to $2,625 in liquidated damages. *Weiss*, 300 Ill. at 18-19. It reasoned that at the time of contracting, the parties reasonably presumed that any delay that might occur would be minor and the amount of $15 per day was not excessive in light of that time frame. *Weiss*, 300 Ill. at 18. It acknowledged that a liquidated damages provision specifying a certain amount per day " 'could be extended to such length of time as to become grossly excessive,' " but the " 'fact that the delay in the particular case was long continued to a time that may be said to be unreasonable or unusual cannot be looked to' " in determining whether to enforce a liquidated damages provision. *Weiss*, 300 Ill. at 19.

¶ 27    The purpose of a liquidated damages provision is to provide parties with a reasonable predetermined damages amount where actual damages may be difficult to ascertain. *Hickox*, 195 Ill. App. 3d at 987-88. Courts generally give effect to such provisions "if the parties have expressed their agreement in clear and explicit terms and there is no evidence of fraud or unconscionable oppression." *Hartford Fire Insurance Co. v. Architectural Management, Inc.*, 194 Ill. App. 3d 110, 115 (1990). As discussed above, plaintiffs here understood and agreed to the explicit terms of paragraph 12(a) when they entered into the purchase agreement, and they make no claim that fraud or unconscionable oppression played a role in inducing them to sign the contract. The nature of a liquidated damages provision is such that the set amount may at times exceed actual damages, and other times actual damages may exceed the set amount. In entering into the purchase agreement, both parties here agreed to accept this inherent risk. *Newcastle Properties, Inc. v. Shalowitz*, 221 Ill. App. 3d 716, 725 (1991). Although defendants could have elected not to seek liquidated damages given the circumstances here, they have the right to pursue such damages under paragraph 12(a), and the provision is valid and enforceable. The trial court properly dismissed plaintiffs' complaint.

¶ 28    Defendants argue in their brief that paragraph 12(a) is valid and enforceable because its provision that the seller would return amounts paid "in excess of: (x) 15% of the Purchase Price (excluding any interest owed under the Purchase Agreement) or (y) the amount of Seller's actual damages, whichever is greater" tracks the language of the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1703(d) (2006)). Due to our disposition of the appeal, we need not consider this argument.

¶ 29    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 30    Affirmed.