2018 IL App (1st) 170781
Opinion filed: June 29, 2018

FIRST DISTRICT
FIFTH DIVISION

No. 1-17-0781

| | | |
|---|---|---|
| BMO HARRIS BANK, N.A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 CH 07753 |
| | ) | |
| JACKSON TOWERS CONDOMINIUM ASSOCIATION, | ) | |
| INC.; FIRSTSERVICE RESIDENTIAL ILLINOIS, INC.; | ) | |
| MARIAN REALTY, INC., | ) | Honorable |
| | ) | Michael T. Mullen, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff-appellant, BMO Harris Bank, N.A. (BMO) filed a complaint to foreclose its mortgage on condominium unit 7C in the Jackson Towers building and later was the successful bidder at the judicial foreclosure sale. A dispute arose between plaintiff and defendants-appellees, the Jackson Towers Condominium Association, Inc., and the building's property managers, FirstService Residential Illinois, Inc. (FirstService) and Marian Realty, Inc. (Marian), regarding whether BMO's failure to pay the postsale assessments in the month following the sale rendered it liable for the delinquent presale assessments that had never been paid by the previous owner. BMO subsequently paid all the presale assessments, then filed a complaint for a declaratory judgment that it was not liable therefor, and also sought damages against defendants for consumer fraud and civil conspiracy. The circuit court dismissed the complaint and denied BMO's motion for reconsideration. We affirm.

¶ 2                                     I. BACKGROUND

¶ 3                                     A. Relevant Law

¶ 4     Section 9(g)(1) of the Condominium Property Act (Act) permits a condominium association to assert a lien against a unit owner for unpaid assessments. 765 ILCS 605/9(g)(1) (West 2016). Section 9(g)(1) also provides for the extinguishment of the lien where the unit is foreclosed upon and the title is vested with the purchaser of the property, as long as the association is named as a party in the foreclosure action. *Id.*

¶ 5     Section 9(g)(3) provides that the purchaser of a condominium unit at a judicial foreclosure sale has the duty to pay postsale assessments "from and after the first day of the month after the date of the judicial foreclosure sale." *Id.* § 9(g)(3). Such payment "confirms the extinguishment" of any lien for presale assessments that were unpaid by the previous owner. *Id.*

¶ 6                                     B. The Facts

¶ 7     In 2013, the owner of unit 7C (the property) was the Eleanor Peterson Trust. The declarations of the association provided that a unit owner was responsible for a proportionate share of common expenses, and that a failure to pay would constitute a lien on the unit. Beginning on or around April 1, 2013, the trust was delinquent in its monthly assessment payments.

¶ 8     In September 2013, the association brought an eviction action against Eleanor Pickrel Peterson, as trustee of the trust, based on the unpaid assessments. On November 6, 2013, an order was entered granting the association possession of the property.

¶ 9     On September 12, 2013, BMO filed a complaint to foreclose its mortgage on the property for the trust's failure to make payments on the mortgage. The trust and the association were named as defendants in the foreclosure action. On March 27, 2014, a judgment of foreclosure

was entered, which provided, in part, for a subordinate lien in favor of the association for unpaid assessments as of March 2013 in the amount of $23,983.95 and directed that the property be sold.

¶ 10    On July 1, 2014, BMO was the successful bidder at the foreclosure sale. On August 18, 2014, an order was entered confirming the foreclosure sale and granting BMO legal possession of the property in 30 days. In October 2014, BMO recorded its judicial sale deed as to the property.

¶ 11    On October 2, 2014, FirstService, the property management company for the building, provided BMO with account statements reflecting that BMO owed $3206.02 for the September 2014 and October 2014 assessments and that the presale assessments not paid by the trust totaled $33,526.90. Later that month, FirstService sent BMO an invoice in the amount of $3281.02 for the postsale assessments owed by BMO. On November 26, 2014, BMO issued a check to the association for that amount.

¶ 12    On December 12, 2014, BMO made another payment for postsale assessments in the amount of $8247.05. This payment was applied toward assessments for the months of August 2014 (which had been omitted from the association's account statement submitted in October), November 2014, and December 2014.

¶ 13    On January 20, 2015, the association transferred to BMO's account the delinquent presale assessments totaling $32,802.99, which were not paid by the trust. BMO made further payments for postsale assessments in March, May, August, and September 2015.

¶ 14    In September 2015, BMO entered into a contract to sell the property to Clintina Sanders-Bolden and Jessie Bolden. Prior to the closing, BMO requested a paid assessment letter from the association pursuant to section 22.1(b) of the Act (*id.* § 22.1(b)). On December 16, 2015,

FirstService issued an assessment letter stating that $30,900.36 in delinquent monthly presale assessments, $15,083.37 in special assessments, and a $75 wire transfer fee were due, for a total of $46,058.73.

¶ 15 On December 31, 2015, BMO and the Boldens closed on the property, and ownership of the property was transferred from BMO to the Boldens. At the closing, pursuant to a title indemnity agreement, the amount of $58,278.84 was deposited with First American Title Company to be held in escrow until BMO had resolved the dispute with the association as to unpaid presale assessments.

¶ 16 On January 1, 2016, Marian replaced FirstService as the property management company for the building. The association and Marian changed the locks on the property and asserted that access would be denied until the delinquent presale assessments were paid. The Boldens made a demand on BMO to tender payment. In response, BMO directed First American Title Company to release the escrowed funds to the association. Upon receipt of those funds, the association released its lien and gave the Boldens access to the property.

¶ 17 On June 8, 2016, BMO brought this action against the association, FirstService, and Marian alleging three claims. In count I, BMO sought a declaration that (1) it extinguished the association's lien for the delinquent presale assessments by foreclosing on the property and acquiring title thereto and it confirmed the extinguishment of the lien by paying the postsale assessments on November 26 and December 12, 2014, pursuant to section 9(g)(3) of the Act; (2) FirstService and the association wrongfully assessed $32,911.24 against BMO; and (3) the association must refund BMO's overpayment. In count II, BMO alleged a claim against the association and FirstService under the Consumer Fraud and Deceptive Business Practices Act

(Consumer Fraud Act) (815 ILCS 505/1 (West 2012)). In count III, BMO alleged a civil conspiracy claim against the association and Marian for locking out the Boldens.

¶ 18 On August 18, 2016, defendants filed a motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). As to count I, defendants argued that a declaratory judgment action was not proper in that any controversy was now moot and such relief was only available to resolve disputes before there has been an irrevocable change in the position of the parties. Defendants further maintained that, under section 9(g)(3) of the Act (765 ILCS 605/9(g)(3) (West 2016)), BMO was required to pay the postsale assessments on the "first day of the month after the date of the judicial foreclosure sale" to confirm the extinguishment of the presale assessment lien but had failed to do so. As to count II, defendants argued that BMO was not a "consumer" under the Consumer Fraud Act and could not bring its action. 815 ILCS 505/1(e) (West 2012). Finally, defendants sought dismissal of the conspiracy claim in count III on the ground that they had not acted unlawfully in changing the locks.

¶ 19 The court granted defendants' motion to dismiss on January 11, 2017, but allowed BMO time to file an amended complaint. The court made an oral finding that BMO's payment of the postsale assessments in late November 2014 was untimely under section 9(g)(3) of the Act and, thus, did not confirm the extinguishment of the association's lien for the delinquent presale assessments. The written order stated that count I was dismissed under section 2-619 of the Code and that counts II and III were dismissed under section 2-615 of the Code. 735 ILCS 5/2-615, 2-619 (West 2016). The court found that the motion to dismiss, as to counts II and III, was misstyled as a section 2-619 motion. Thereafter, BMO filed a motion to reconsider the court's order dismissing the complaint. The court denied the motion to reconsider on February 22, 2017,

and, again, allowed BMO time to file an amended complaint. BMO did not amend its complaint. On March 16, 2017, the court dismissed the case with prejudice. BMO appeals.

¶ 20                                    II. ANALYSIS

¶ 21                        A. The Declaratory Judgment Count

¶ 22    BMO argues that the circuit court erred by dismissing count I of its complaint for a declaratory judgment pursuant to section 2-619 of the Code, finding that its payments of postsale assessments on November 26 and December 12, 2014, were untimely and thus failed to confirm the extinguishment of the association's lien for the delinquent presale assessments under section 9(g)(3) of the Act.

¶ 23    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and asserts an affirmative matter outside the pleading that avoids the legal effect of or defeats the claim. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 20. In ruling on a section 2-619 motion, we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995). Defendant bears the initial burden of establishing that the affirmative matter defeats plaintiff's claim; if defendant satisfies the burden, the burden shifts to plaintiff to demonstrate that the defense is unfounded or requires resolution of a material fact. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 37. Our review is *de novo. McCarthy v. Abraham Lincoln Reynolds, III, 2006 Declaration of Living Trust*, 2018 IL App (1st) 162478, ¶ 14.

¶ 24    The declaratory judgment process allows the circuit court to address a controversy after a dispute arises but before steps are taken that give rise to a claim for damages or other relief. *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶ 10. "The parties to the dispute can then learn the consequences of their action before acting." (Internal quotation marks

omitted.) *Beahringer v. Page*, 204 Ill. 2d 363, 373 (2003). Although a declaratory judgment action is proper to determine the parties' existing rights, the court may dismiss such an action where the party seeks to enforce his rights after the fact. *Karimi*, 2011 IL App (1st) 102670, ¶ 10.

¶ 25    BMO's complaint for a declaratory judgment was not a proper vehicle here to contest the association's lien for the presale assessments, as BMO was seeking to enforce its rights *after* having paid those assessments. Specifically, BMO paid all delinquent presale assessments in January 2016 following the association's lockout of the Boldens, and the association then released its lien and gave the Boldens access to the property. Now, after the fact, *i.e.*, after the payment of all delinquent presale assessments in January 2016, the release of the association's lien, and the end of the lockout of the Boldens, BMO seeks to enforce its rights to the monies paid for the presale assessments via a declaratory judgment that the lien for those presale assessments had already been extinguished in November and December 2014. The circuit court properly dismissed the declaratory judgment complaint, as BMO cannot use the declaratory judgment process to contest the validity of a lien for presale assessments that has already been satisfied by BMO's payment thereof. See *id.* Although this was not the basis for the circuit court's dismissal, we may affirm on any basis warranted by the record. *Miller v. Lawrence*, 2016 IL App (1st) 142051, ¶ 20.

¶ 26    The purpose of the declaratory judgment action is to give guidance for future conduct, not to provide relief related to past conduct. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 41. Here, BMO does not seek guidance regarding any future conduct but, rather, seeks relief related to its prior conduct of paying the presale assessments in

response to the association's lockout of the Boldens. Accordingly, we affirm the dismissal of BMO's declaratory judgment count.

¶ 27                                 B. The Consumer Fraud Count

¶ 28    The circuit court dismissed BMO's consumer fraud count pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2016). A section 2-615 motion challenges the legal sufficiency of the complaint based on defects apparent on the face of the pleading. *Ledeaux v. Motorola Inc.*, 2018 IL App (1st) 161345, ¶ 14. The court accepts as true all well-pleaded facts, as well as any reasonable inferences flowing from those facts. *Id.* The court should not dismiss a cause of action under section 2-615 unless the pleadings clearly show that no set of facts can be proven that would entitle plaintiff to recover. *Id.* Our review of the dismissal order is *de novo. Id.*

¶ 29    To plead a cause of action under the Consumer Fraud Act, a plaintiff must allege (1) a deceptive act or practice by defendant, (2) defendant's intent for plaintiff to rely on the deception, (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to plaintiff that was proximately caused by the deception. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 24.

¶ 30    BMO argues on appeal that defendants FirstService and the association violated the Consumer Fraud Act and engaged in consumer fraud when they sent the assessment letter on December 16, 2015, stating that BMO owed over $30,000 in delinquent presale assessments, where BMO had already confirmed the extinguishment of the association's lien for those presale assessments.

¶ 31    BMO forfeited review of this issue, as BMO's consumer fraud count only pleaded that defendants violated the Consumer Fraud Act on December 16, 2015, by double-billing it for special assessments and did not plead consumer fraud based on BMO's extinguishment of the

association's lien. See *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 170 (2002) (a party forfeits review of a theory that is not contained in the complaint).

¶ 32    Also, BMO makes no argument on appeal regarding the allegedly fraudulent double-billing and, accordingly, has forfeited review of this issue as well. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017).

¶ 33    We affirm the dismissal of BMO's consumer fraud count.

¶ 34                           C. The Civil Conspiracy Count

¶ 35    Next, we address the circuit court's order dismissing BMO's civil conspiracy count pursuant to section 2-615 of the Code. To state a claim for civil conspiracy, a plaintiff must allege facts showing: (1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by defendant. *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49. Because conspiracy is not an independent tort, if a plaintiff fails to state an independent cause of action underlying the conspiracy allegations, the claim for conspiracy also fails. *Id.*

¶ 36    BMO pleaded that defendants, Marian and the association, conspired to lock out the Boldens after the Boldens' purchase of condominium unit 7C in the Jackson Towers building and then used the lockout as leverage to force BMO to pay the presale assessments.

¶ 37    BMO argues on appeal that the self-help lockout of the Boldens was the tortious act committed in furtherance of the conspiracy; no tortious act is alleged to have been committed against BMO. As the injured party, the Boldens would have standing to assert a tort claim; BMO would lack standing. *Northbrook Bank & Trust Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 44.

BMO's civil conspiracy claim fails because BMO cannot maintain an independent tort claim against defendants for the lockout of the Boldens. *Merrilees*, 2013 IL App (1st) 121897, ¶ 49.

¶ 38    Accordingly, we affirm the dismissal of BMO's civil conspiracy count. As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 39                                    III. CONCLUSION

¶ 40    For all the foregoing reasons, we affirm the judgment of the circuit court.

¶ 41    Affirmed.