# Illinois Official Reports

## Appellate Court

---

### *Constantinou v. Global Financial Credit, LLC*, 2021 IL App (1st) 192325

---

| | |
|---|---|
| Appellate Court Caption | POLYXENI CONSTANTINOU, Plaintiff-Appellant, v. GLOBAL FINANCIAL CREDIT, LLC, a Delaware Corporation, d/b/a MedChex, and ATHLETICO, LTD., an Illinois Corporation, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-19-2325 |
| Filed | February 26, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-09269; the Hon. Anna M. Loftus, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Larry D. Drury and Thomas M. Rebholz, of Larry D. Drury, Ltd., and John H. Alexander, of John H. Alexander & Associates, LLC, both of Chicago, for appellant.<br><br>E. King Poor and John A. Aramanda, of Quarles & Brady LLP, of Chicago, for appellee Global Financial Credit, LLC.<br><br>Christine E. Skoczylas, of Barnes & Thornburg, LLP, of Chicago, for other appellee. |

Panel

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Harris and Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1    In *Wilson v. F.B. McAfoos & Co.*, 344 Ill. App. 3d 452, 457 (2003), this court held that "where the legislature does not provide for the assignability of a statutory lien, it does not intend for that lien to be assignable." The plaintiff in this case has alleged that, notwithstanding our holding in *Wilson*, one of the defendants in this case—a healthcare provider from whom the plaintiff received medical treatment following a personal injury—attempted to assign its statutory lien against the plaintiff's personal injury settlement to the other defendant—a billing company and non-healthcare provider. The circuit court dismissed plaintiff's claims with prejudice, finding that no injury to her or to the proposed class of similarly situated individuals could have stemmed from this improper assignment. Because we find that plaintiff has adequately alleged that defendants' improper use of the lien procedure deprived her of a right she would otherwise have enjoyed—the right to presently possess her settlement proceeds— we reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND
¶ 3                             A. Ms. Constantinou's Complaint
¶ 4    In her July 24, 2018, class action complaint in this matter, plaintiff Polyxeni Constantinou alleged that she suffered personal injuries in a vehicular accident on December 2, 2016, and sought treatment from defendant Athletico, Inc. (Athletico), a provider of physical therapy services. On June 14, 2017, Athletico sent a document titled "Notice of Health Professional Lien" to Ms. Constantinou's personal injury attorney. In it, Athletico claimed a lien in the amount of $11,943.00—its charges for health care services rendered to Ms. Constantinou— against any recovery she might obtain from the unnamed party or parties responsible for her injuries. A little over two months later, on August 25, 2017, Ms. Constantinou's attorney received another letter from Athletico, stating in part, "we have partnered with [MedChex] to manage the medical receivable(s) listed" and "from this day forward we ask that you correspond with them as it relates to obtaining lien satisfaction payoff amounts." On the same day, Ms. Constantinou's attorney received correspondence from defendant MedChex, titled "Notice of MedChex Medical Lien," which stated "MedChex is now the billing company for the above and has taken assignment for a medical lien in the amount of $11,943.00 for services rendered to [Ms. Constantinou]."

¶ 5    Ms. Constantinou alleged that both lien notices were defective in several technical respects, including that they did not name the individual who had injured Ms. Constantinou and they were served on Ms. Constantinou's attorney rather than on her directly. Ms. Constantinou's core allegation, however, was that Athletico lacked authority to assign its lien and, in attempting to do so, had violated section 10(e) of the Health Care Services Lien Act (Lien Act), which provides that "[p]ayments under [health care services] liens shall be made directly to the health care professionals and health care providers" (770 ILCS 23/10(e) (West 2016)) and

- 2 -

which lacks any provision expressly allowing for the assignment of such liens. Seeking to represent a nationwide class of similarly situated individuals who, in or after 2013, had been served with notices of liens purportedly assigned to MedChex, Ms. Constantinou asserted claims against Athletico and MedChex for (1) violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2016)), (2) unjust enrichment, (3) injunctive relief, (4) negligence, (5) negligent misrepresentation, and (6) declaratory relief.

¶ 6    Ms. Constantinou alleged that by serving unauthorized notices of MedChex liens, defendants had misrepresented or concealed from her and the proposed class that (1) Athletico had no authority to assign its liens to MedChex and (2) MedChex, as a non-health care provider, had no authority to serve or present notice of a lien under the Lien Act to Ms. Constantinou for payment. She alleged that, as a proximate result of these misrepresentations or omissions, she and other members of the proposed class had suffered "damages including but not limited to any loss from settlement funds claimed by Defendants, with interest." Ms. Constantinou sought to enjoin defendants from making similar misrepresentations or omissions in the future and, in her prayer for relief, asked the court to enter an order "[r]equiring that Defendants release and extinguish any and all liens assigned by ATHLETICO."

¶ 7    Ms. Constantinou also sought "a judgment declaring Defendants committed deceptive, unfair and illegal acts, were negligent and engaged in negligent misrepresentation, and violated 770 ILCS 23/1, 23/10(b) [notice requirements], and 23/10(e) [direct payment requirement], *et seq.*, all to Plaintiff's and the Class' detriment and damage." Ms. Constantinou asserted that she was entitled to this declaratory relief because she had "a continuing, ongoing, actual and legal tangible interest in the monies owed to [her] and the Class" and defendants had an "ongoing opposing interest in the purported validity of the subject liens and the assignment thereof."

¶ 8                              B. Defendants' Motions to Dismiss

¶ 9    Defendants moved to dismiss Ms. Constantinou's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)). The court held a hearing on February 15, 2019, and allowed extended argument by the parties. At the conclusion of that hearing, the court granted the motions and dismissed Ms. Constantinou's claims with prejudice.

¶ 10    With respect to her consumer fraud claim, the court concluded, among other things, that any omission on defendants' part regarding the legality of the lien assignment was immaterial because, lien or no lien, Ms. Constantinou still owed money for the services she had received. The court also concluded that, absent any attempt to enforce the lien, defendants had not been unjustly enriched at Ms. Constantinou's expense. And the court agreed with defendants that Ms. Constantinou's claims for negligence and negligent misrepresentation were barred by the economic loss doctrine.

¶ 11    The court likewise dismissed Ms. Constantinou's equitable claims, noting that an injunction is "not a [separate] cause of action" and explaining that Ms. Constantinou's request for a declaration "asking this court to declare liability *** on Counts I through V, which [were] already freestanding counts," was "superfluous." Plaintiff's request for declaratory relief was also improper, the court concluded, because she was asking the court "to determine [that] what

ha[d] already occurred was wrong, not to *** set the stage for going forward." The court believed that "[t]he most straightforward way to address this" was for Ms. Constantinou to avail herself of the lien adjudication procedure provided for in the Lien Act.

¶ 12 The circuit court denied plaintiff's counsel's request for leave to file an amended complaint. In the court's view, Ms. Constantinou would not be able to adequately allege damages stemming from defendants' conduct. The court rejected the notion that Ms. Constantinou had lost the time value of the funds her lawyer was holding in escrow because of the lien, stating:

"I've already determined that those are not damages. She owes money. Whether it's an improper lien or not, she still owes the money, so that money is still not hers. So regardless of whether she had access to it or didn't have access to it, it's never going to equate to damages.

So even if you re-plead and re-plead that, it will not be a cure *** you can't cure the fact that no damages are pled."

¶ 13 The court therefore dismissed Ms. Constantinou's initial complaint in its entirety and did so with prejudice.

¶ 14 C. Ms. Constantinou's Motion to Vacate or Reconsider
and Motion to Amend

¶ 15 On March 18, 2019, Ms. Constantinou simultaneously moved the court to vacate or reconsider its dismissal order and for leave to file an amended complaint. She argued that the court had ignored the illegality of the lien assignment and improperly focused on a request made in her prayer for relief that Athletico release the accompanying debt, which she argued was not part of her claims and should not have been construed together with them. Ms. Constantinou also argued that dismissal with prejudice had not been warranted because additional facts included in her proposed amended complaint would bolster her damages allegations. Ms. Constantinou specified, for example, the rules of professional conduct, under which her attorneys were holding funds in the amount of the lien in escrow.

¶ 16 Ms. Constantinou's proposed amended complaint altered only her claims for injunctive and declaratory relief. Her other claims were incorporated by reference to preserve them for appeal. Her amended claim for injunctive relief focused not on enjoining defendants from misrepresenting that Athletico liens could be validly assigned to MedChex, as her initial complaint had, but on preventing defendants from engaging in such transactions in the future. Her amended claim for declaratory relief asserted, as her initial complaint had, that Ms. Constantinou had an ongoing interest in the use of her settlement proceeds and that defendants had an "ongoing opposing interest in the purported validity of the Athletico assignment of the lien." Omitting any reference to findings of liability on her other freestanding claims, Ms. Constantinou sought only a declaration that the lien had been "improperly assigned" and that this had caused the proceeds from her personal injury settlement to be wrongfully impaired or encumbered.

¶ 17 In their joint response, defendants argued that the circuit court had "correctly concluded that even if MedChex's purported lien was invalid, the underlying debt for Athletico's services was not extinguished," and "Athletico continue[d] to have a valid and enforceable lien even assuming that it could not assign [that lien] to MedChex." Defendants further argued that

declaratory relief cannot be used to enforce a statute providing no private right of action and that, like other equitable relief, it is unavailable where there is an adequate remedy at law. Defendants maintained that Ms. Constantinou's bare assertion that she was not required to file a petition to adjudicate the lien under the Lien Act was insufficient to establish that she lacked an adequate remedy at law.

¶ 18 Defendants further argued that Ms. Constantinou could not move for leave to amend, as she might have done prior to a final judgment under section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2018)). Rather, because a final judgment had been entered, at most she could amend to conform to the proofs under section 2-616(c) (*id.* § 2-616(c)). But even if considered under section 2-616(a), defendants argued the proposed amendments did not cure the defects in Ms. Constantinou's complaint. She still did not allege why she had no adequate remedy at law. And once her own request for injunctive relief was dismissed, she had no standing to seek such relief on behalf of a proposed class.

¶ 19 At the conclusion of the hearing, the circuit court denied Ms. Constantinou's motions. The court explained its reasoning as follows:

"[T]he question here is whether plaintiffs could ever state a cause of action and whether they should be allowed to file a—an amended complaint. Even if the complaint was properly pleaded, though, the counts—the claims do not add up to viable claims no matter how they are pled.

As I previously stated, the plaintiff still owes the money. She hasn't been deprived of the use. The money was from a settlement I believe or a judgment in a different case. And her—An attorney has been holding it in the IOLTA [Interest on Lawyer Trust Accounts] pursuant to the lien that is the subject of this complaint. In order to determine whether the lien is valid or not, the attorney or someone else should file a petition to adjudicate the lien. That is the proper course of action for this.

I suspect that counsels want to make this into a class action and that's why they are going this direction. But it is improper. You cannot get a declaratory judgment to say that conduct is bad. There needs to be an actual dispute between the parties. And I believe as I said previously defendants are not seeking at this time to enforce the lien. So there is no actual controversy. The way to address this now if you want to affirmatively adjudicate the lien now is to file a petition to adjudicate the lien. The motion to reconsider is denied. I don't think the arguments will change my view on the motion for leave to file an amended class action complaint given my decision.

*** So the motion is— The motion for leave to file the amended class action complaint is denied as well."

¶ 20 This appeal followed.

¶ 21 II. JURISDICTION

¶ 22 The circuit court dismissed Ms. Constantinou's complaint with prejudice on February 15, 2019, and denied her motions for reconsideration and for leave to file an amended complaint on October 22, 2019. Ms. Constantinou filed a timely notice of appeal from those orders on November 13, 2019. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered

by the circuit court in civil cases.

¶ 23                                   III. ANALYSIS

¶ 24     On appeal, Ms. Constantinou argues that the circuit court erred by dismissing her claims against defendants for consumer fraud, unjust enrichment, negligence, negligent misrepresentation, and injunctive and declaratory relief. Ms. Constantinou argues in the alternative that she should have been granted leave to amend her claims for injunctive and declaratory relief. We first consider whether dismissal was proper.

¶ 25     A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. "[T]he issue on appeal is whether the allegations ***, when liberally construed, taken as true, and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). A court considering such a motion accepts as true not only the well-pleaded facts set out in the complaint but all reasonable inferences that may arise from those facts. *Kanerva*, 2014 IL 115811, ¶ 33. Dismissal is only proper when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. Our review is *de novo*. *Id.*

¶ 26                          A. The Health Care Services Lien Act

¶ 27     This case involves the purported assignment of a statutory lien. A lien is a property interest—"a legal claim upon the property recovered"—that acts "as security for payment of [a] debt." *In re Estate of Cooper*, 125 Ill. 2d 363, 369 (1988). Our supreme court has made clear that when a lien "is a creature of statute," the act giving rise to it "must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001) (noting that "[a]ttorneys who do not strictly comply with the [Attorneys Lien] Act [(770 ILCS 5/1 *et seq.* (West 2000))] have no lien rights").

¶ 28     The statute at issue here provides, with certain inapplicable exceptions, that

> "[e]very health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person." 770 ILCS 23/10(a) (West 2018).

The total amount of all liens under the Lien Act, however, may not exceed "40% of the verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his or her claim or right of action." *Id.*

¶ 29     Section 20 of the Lien Act provides that a lien attaches "from and after the time of service of the lien notice." *Id.* § 20. Subsection 10(e) states that "[p]ayments under the liens shall be made directly to the health care professionals and health care providers." *Id.* § 10(e). And section 30 allows either the injured person or the health care provider to seek judicial adjudication of a lien arising under the Lien Act. *Id.* § 30. Lastly, the Lien Act recognizes that a health care services provider may pursue collection of the entire amount owed to it, regardless of the existence or amount of a statutory lien giving it a security interest in the patient-debtor's

personal injury recovery. Section 45 states that "[n]othing in this Act shall be construed as limiting the right of a health care professional or health care provider, or attorney, to pursue collection, through all available means, of its reasonable charges for the services it furnishes to an injured person," and that "a lien holder may seek payment of the amount of its reasonable charges that remain not paid after the satisfaction of its lien under th[e] Act." *Id.* § 45.

¶ 30    Ms. Constantinou's claims stem from her allegation that section 10(e) of the Act prohibits the assignment of health care services liens to third parties. In support of this reading of the statute, Ms. Constantinou cites this court's decision in *Wilson v. F.B. McAfoos & Co.* We held in that case that liens under the Physicians Lien Act (770 ILCS 80/0.01 *et seq.* (West 2002)), a precursor to the Lien Act, were not assignable as a matter of law. *Wilson*, 344 Ill. App. 3d at 457. Bearing in mind that "[a] lien created by statute is limited in operation and extent by the terms of the statute" (*id.* At 456) and observing that the Physicians Lien Act, like other health care lien statutes, did not expressly provide for the assignability of liens, we concluded that "where the legislature has intended that a statutory lien be assignable, it has so provided in the statute itself" (*id.* at 457). Conversely, where, as here, "the legislature does not provide for the assignability of a statutory lien, it does not intend for that lien to be assignable." *Id.* Defendants do not argue on appeal and did not suggest in the circuit court that *Wilson* does not apply here to prohibit the assignment of Athletico's statutory lien to MedChex.

¶ 31    Ms. Constantinou insists that, in dismissing her complaint, the circuit court disregarded our holding in *Wilson*. We do not share this view. Both defendants and the circuit court appear to have assumed, at least for purposes of these motions to dismiss, that a lien assignment from Athletico to MedChex would have been invalid. However, in the court's view, this would not give rise to a claim if Ms. Constantinou suffered no harm from the assertion of an invalid assignment. We agree with Ms. Constantinou that her complaint, broadly read, does allege such harm.

¶ 32                    B. Allegations That Ms. Constantinou Was Harmed by
                                   Defendants' Conduct

¶ 33    Ms. Constantinou alleged that, upon receiving notice of MedChex's lien, her attorney was obligated to withhold nearly $12,000 from Ms. Constantinou's personal injury recovery. Ms. Constantinou further alleged that this resulted in "lost interest and the ability to invest her funds, *i.e.*, the time value of money."

¶ 34    Defendants assume—incorrectly in our view—that an unauthorized assignment could not have impacted Athletico's otherwise valid statutory lien, which would independently have encumbered Ms. Constantinou's settlement proceeds, even if no assignment had been attempted. However, it is reasonable to infer from Ms. Constantinou's allegations that, even if MedChex could not take assignment of Athletico's *lien*, it still purchased the underlying *debt* from Athletico. If that is the case, then Athletico lost its own ability to collect that debt, through the mechanism of a lien of otherwise. As defendants themselves point out, "a lien cannot exist without a debt" (citing 51 Am. Jur. 2d *Liens* § 16 (2018)). This is fully consistent with our decision in *Wilson*, where we pointed out that the party that had wrongfully been assigned a statutory lien nevertheless "had a right to sue the plaintiff in a separate action to recover the debt, whether in breach of contract or otherwise." *Wilson*, 344 Ill. App. 3d at 459.

¶ 35    It is possible that documents relating to defendants' transaction will show that MedChex did not purchase the debt. Because discovery was stayed in this matter, plaintiff is not privy to

such documents. But a transfer of the debt can reasonably be inferred from the communications Athletico and MedChex sent to Ms. Constantinou's lawyer, which Ms. Constantinou attached to and incorporated by reference in her complaint. And at this stage Ms. Constantinou is entitled to all reasonable inferences arising from her allegations. *Kanerva*, 2014 IL 115811, ¶ 33.

¶ 36 The circuit court rejected Ms. Constantinou's claim that the withholding of settlement funds from her had caused her any damages when, ultimately, she still owed money for the services she received. The court's conclusion may have been influenced by the fact that, at times, plaintiff's counsel incorrectly implied that an invalid lien transfer somehow extinguished Ms. Constantinou's underlying debt.

¶ 37 We think it is apparent that what got lost in the extensive briefing and argument in the circuit court is that the question underlying Ms. Constantinou's claims has never been who is *ultimately* entitled to all or part of the $12,000 now held in her attorney's IOLTA account. MedChex may well be entitled to this money because it purchased the debt that Ms. Constantinou incurred to Athletico. Rather, the question is who is entitled to the *present use* of those funds pending resolution of the debt. If neither MedChex nor Athletico has a valid lien, then regardless of whether Ms. Constantinou still owes money for her care, her settlement funds should not be kept from her. We agree with Ms. Constantinou that she properly alleged she was damaged by the fact that an invalid lien was used to deprive her of money that she was entitled to possess—subject to the right of the holder of the debt to take other legal action to collect it—because as long as that lien was pending, her lawyer was required to hold that money in his IOLTA account.

¶ 38                    C. Ms. Constantinou's Equitable Claims

¶ 39 This is, in our view, precisely the sort of harm that equitable relief is intended to address. The declaratory judgment statute provides that

> "[t]he court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701 (West 2018).

Here, a purportedly invalid statutory lien has been used to prevent Ms. Constantinou from presently possessing settlement funds that, without the lien mechanism, defendants would have no ability to encumber. Ms. Constantinou has a definite interest in a determination as to whether that lien is valid.

¶ 40 A party seeking a permanent injunction must demonstrate "(1) a clear and ascertainable right in need of protection, (2) irreparable harm if injunctive relief is not granted, and (3) no adequate remedy at law." *Sparks v. Gray*, 334 Ill. App. 3d 390, 395 (2002). Here, Ms. Constantinou has alleged a clear and ascertainable right to the present possession of her encumbered settlement funds that is in need of protection. If she can prove her allegations, then she is clearly entitled to hold onto those funds while the matter of her debt is ascertained. And the lien adjudication procedure in section 30 of the Lien Act (770 ILCS 23/30 (West 2018)) does not provide Ms. Constantinou with an adequate remedy at law because nowhere has it

been suggested that she could recoup the time value associated with the present encumbrance of her funds through such a procedure.

¶ 41 We agree with the circuit court that Ms. Constantinou's initial request for "a judgment declaring Defendants committed deceptive, unfair and illegal acts, were negligent and engaged in negligent misrepresentation," was "superfluous" because it sought a finding of liability on her other claims. And, in any event, as we explain below, we have concluded that those claims, as pleaded, were properly dismissed. But Ms. Constantinou went on to ask for a declaration that, in attempting to assign the lien, defendants had violated section 10(e) of the Lien Act and an injunction prohibiting them from continuing to assert the existence of a valid lien. These were proper requests for equitable relief.

¶ 42 Defendants insist that because Ms. Constantinou alleges harm, and not just the threat of future harm, declaratory relief is unavailable to her. In support of this argument, they cite *BMO Harris, N.A. v. Jackson Towers Condominium Ass'n*, 2018 IL App (1st) 170781, ¶ 24, where we noted that "[t]he declaratory judgment process allows the circuit court to address a controversy after a dispute arises but before steps are taken that give rise to a claim for damages or other relief," so that the parties to the dispute may "learn the consequences of their action before acting." (Internal quotation marks omitted.) The plaintiff in *BMO Harris* was a bank that elected to pay disputed post-sale assessments following a mortgage foreclosure sale and then, after the fact, sue for a declaration that it had no obligation to do so. *Id.* ¶ 1. Ms. Constantinou, in clear contrast, seeks not an after-the-fact finding of liability, but a declaration of her *existing* rights to the settlement funds that have been withheld from her.

¶ 43 Although Ms. Constantinou's arguments on appeal are based on the amended claims for such relief that she was denied leave to file, we find that, once stripped of the "superfluous" requests noted above, her original requests were adequately stated. Ms. Constantinou has always sought—on behalf of herself and the class she seeks to represent—a declaration that Athletico cannot assign its liens to MedChex under the Lien Act and an injunction prohibiting defendants from asserting that they have any right to presently encumber the personal injury recoveries of her and others like her. Thus, we find that the circuit court improperly dismissed her original equitable claims for injunctive and declaratory relief.

¶ 44 　　　　　　　　　D. The Dismissal of Ms. Constantinou's Other Claims

¶ 45 The circuit court announced several bases for the dismissal of Ms. Constantinou's nonequitable claims—for consumer fraud, unjust enrichment, negligence, and negligent misrepresentation. Ms. Constantinou has largely failed to respond to these grounds for dismissal, and we find them persuasive.

¶ 46 As to the unjust enrichment claim, because neither defendant has sought to enforce its lien or has been paid for its services, no defendant has been unjustly enriched at Ms. Constantinou's expense. This was precisely our holding in *Galvan v. Northwestern Memorial Hospital*, 382 Ill. App. 3d 259, 272 (2008), and Ms. Constantinou makes no argument, in either her opening brief or her reply brief, that *Galvin* does not apply here. Her claim for unjust enrichment was thus properly dismissed.

¶ 47 Ms. Constantinou's consumer fraud claim was also properly dismissed. A claim of consumer fraud

"requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009).

¶ 48 The fraudulent omission that Ms. Constantinou has identified—a failure to inform her, before she accepted Athletico's services, that Athletico might one day attempt to assign a lien held against her personal injury recovery—is simply not "the type of information upon which a buyer would be expected to rely in making a decision whether to purchase" the defendant's services. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996).

¶ 49 To the extent that Ms. Constantinou suggests that the lien notices themselves were fraudulent, she fails to allege what about them was deceptive. Ms. Constantinou acknowledged in her briefing in the circuit court that there was nothing deceptive about Athletico's statement that it had "partnered" with MedChex to "manage the medical receivable(s)" associated with Ms. Constantinou's debt. And to the extent that she relies on the fact that MedChex's correspondence indicated that a valid lien assignment had taken place—when, by law, it could not have—we agree with defendants that this case is similar to *De Bouse*, 235 Ill. 2d at 558. In *De Bouse*, our supreme court held, in answering a certified question, that the "mere sale of a prescription medication cannot be a representation which serves as the basis for a consumer fraud claim." As our supreme court recognized, there the consumer would rely on the expertise of his or her doctor to determine the safety of a prescription medication. Similarly, Ms. Constantinou relied on her lawyer to tell her whether the lien asserted was valid—particularly because notice of the lien actually went to her lawyer.

¶ 50 Finally, Ms. Constantinou's negligence claims were barred by the economic loss rule, or "*Moorman* doctrine," which states that a " 'plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent [negligent] misrepresentation.' " *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611, 618 (2010) (quoting *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 91 (1982)). The circuit court correctly concluded that none of the three exceptions to that doctrine were implicated by Ms. Constantinou's allegations. Those exceptions are (1) personal injury or property damage resulting from "a sudden or dangerous occurrence," (2) intentional fraud, and (3) a negligent misrepresentation by a defendant that is "in the business of supplying information for the guidance of others in their business transactions." *Id.*

¶ 51 Although we agree with these bases for dismissal, it is clear to us from the record that the circuit court only dismissed these claims *with prejudice* because it believed Ms. Constantinou was incapable of alleging harm flowing from defendants' communications. Because—as noted above—we disagree with that conclusion, and because the details of defendants' transaction are unclear but are likely to be revealed through discovery, we find dismissal of these claims with prejudice is unwarranted at this early juncture. See *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008) ("a cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle plaintiffs to relief").

¶ 52 Because we conclude that Ms. Constantinou's initial complaint adequately stated claims for injunctive and declaratory relief, there is no need for us to consider whether the circuit court erred in denying her leave to amend those claims.

## IV. CONCLUSION

For the above reasons, we reverse the dismissal of Ms. Constantinou's claims for injunctive and declaratory relief and affirm the dismissal of her claims for consumer fraud, unjust enrichment, negligence, and negligent misrepresentation. We disagree with the circuit court's basis for dismissing those claims with prejudice and instead conclude that Ms. Constantinou adequately alleged she was damaged by defendants' conduct. Because it is possible that grounds for successfully amending one or more of the dismissed claims could arise during discovery, dismissal of those claims is without prejudice.

Affirmed in part and reversed in part.

Cause remanded.